In the Matter of the Claim of MARY CLAREMONT, Mother of JOSEPH CLAREMONT, Deceased, Respondent, for Compensation under the Workmen's Compensation Law for the Death of JOSEPH CLAREMONT, v. OVID DE COSS, Employer, and MASSACHUSETTS BONDING AND INSURANCE COMPANY, Insurance Carrier, Appellants.

*Workmen's Compensation Law — lumbering — injury by fall of tree — subcontractor — notice of injury.*

Appeal from an award made by the State Industrial Commission March 2, 1916.

Award affirmed. All concurred, except Woodward, J., who dissented.

WOODWARD, J. (dissenting): Joseph Claremont received injuries resulting in his death on the 3d day of July, 1914, while engaged in felling a tree at or near Benson Mines, St. Lawrence county, this State. The first claim for compensation, signed by Mary Claremont of Lyon Mountain, alleged that Joseph G. Claremont, age twenty-three, was in July, 1914, working for J. H. Corbit at Benson Mines, N. Y.; that Ovide Ducier had charge of the men, among whom was Joseph G. Claremont; that the men were engaged in lumbering, and while Mr. Claremont was felling a tree, it struck him and caused his death. It further alleged that "the undersigned, Mary Claremont, is the widow of said Joseph G. Clare-

———

* See Consol. Laws, chap. 67 (Laws of 1914, chap. 41), § 2, group 22. Since amd. by Laws of 1916, chap. 622.— [REP.

mont, and that her address is Lyon Mountain, N. Y.; that the following are children of said Joseph G. Claremont and dependent on her for support," and then this claim tells us that this man of twenty-three years of age had as his children Ruth Claremont, age fourteen years; George Claremont, age twelve years; Albert Claremont, age ten years; Francis Claremont, age six years, and Roy Claremont, age four years, and that the daily wages of this young and prolific father, engaged in cutting down trees in St. Lawrence county, was five dollars per day, and that "I claim for myself and children the compensation allowed under the Workmen's Compensation Law, passed March 16, 1914." Subsequently, and on the 6th day of October, 1915, without any attempt to explain the original claim, so far as appears from the record, Mary Claremont, giving her present address as Faust, N. Y., "old address, Lyon Mountain, N. Y.," makes a new claim, from which not only are all these alleged children dropped, but the claimant now appears as the mother of this remarkable young man instead of his widow with five named children, the eldest of whom was alleged to have been within nine years of the age of her alleged father, depending upon her for support. I call attention to this fact because of the great stress which appears to be given to the first report of the alleged employer, made on the very day of the accident, upon a regular blank, containing a warning that the same must be filled in to avoid a penalty, in which in answering the question "Employer's name?" the name "Ovid De Coss" is given, and he states that the employee was injured in the course of his employment, and the name of the employee is given as Joseph J. Claremont. Upon this basis alone, though contradicted by the subsequent sworn statement of Ovid De Coss, the alleged employer, and several others, this award is based. In the affidavit of the alleged employer he says that he took a contract from the Carthage Tissue Paper Mills of Carthage; that his business was cutting, peeling and piling pulp wood; that the decedent was not in his employ; "I sublet him a portion of my contract." He again states, in answer to the question, "In what capacity was he in your employ?" that he was "Not in my employ." It is true that the physician who attended the decedent states that the latter was employed by Mr. De Coss, but it does not appear that he had any knowledge of the matter other than the fact of the accident and that the decedent was engaged in the work of felling a tree. One Albert Burrell makes an affidavit to the effect that he was the bookkeeper for Ovid De Coss at his log camp in the woods west of Benson Mines on the day of the accident; that he kept the books of all the men working for De Coss; that he knew Joseph Claremont, Jr., and remembers the time when he came to the De Coss camp. Joseph Claremont, Jr., his father and five other men went to work in the woods near the De Coss camp cutting pulp; they were jobbers and were to cut not more than 1,000 cords of wood; they cut 951 cords and were paid two dollars and fifteen cents per cord; that he kept a time book, and that Claremont and the other six men were not on it; he did not keep their time; after they had cleared the woods the timber was measured and the men paid and they left the camp; they had boarded themselves in the woods in a shack. Arthur Plant and

Horace Marcoux make a joint affidavit to the effect that in the month of June, 1914, they came to the De Coss camp with Joseph Claremont, Sr., Joseph Claremont, Jr., H. Marcoux, T. King, T. Parquet and E. La Bonty, to work clearing the woods of pulp; they were to receive two dollars and fifteen cents per cord and divide it between the seven; "I never worked by the day during the summer, always worked as jobbers and had the other six work with me as jobbers." Ovid De Coss, the alleged employer, in an affidavit says "that he has a contract with the Carthage Tissue Paper Company of Carthage to clear the woods for pulp wood, west of Benson Mines; * * * during the course of the contract he hired men by the day and others by the job; the jobbers, as they are called, were, given a woods to clear, and were to receive so much per cord, cut and piled; these men took full charge of the work and had no one over them. It is a common custom for woodsmen to take jobs of clearing. On or about the 15th day of June, 1914, Arthur Plant and Joseph Claremont, Sr., were given a job by me to clear a portion of the woods; these men and Joseph Claremont, Jr., H. Marcoux, Emedie La Bonty, Frank Parquet and T. King, had been working by the job for Joseph Ducey, and when Plant and Claremont, Sr., took the job they had the other five men join them on my job; the seven went to work and cleared the woods and the amount of work was to be divided between the seven. The work was completed by the six after Claremont, Jr., was killed. When the job was finished it was checked up and found that they had 951 cords of pulp wood and received two dollars and fifteen cents per cord. This money was divided into seven portions, during the time J. Claremont, Jr., worked, and six portions for the remainder of the time. J. Claremont's share was given to the father. After the job was finished they left. * * * The seven men worked independent of deponent; they cleared when they wanted to, peeled of their own free will. They had no connection with deponent except to be paid by the cord when finished. The seven men were from Lake Placid." There appears to have been a hearing before a Deputy Commissioner, but no evidence was adduced, and the Commission awarded two dollars and sixty cents per week during the alleged dependency of the claimant, who appears to be the wife of Joseph Claremont, Sr., and not the widow of Joseph Claremont, Jr., with the alleged five children to support. This finding and award in favor of the claimant is made against the advice of W. C. Richards, the Deputy Commissioner, who investigated the claim, and who was unable to discover that there were any legitimate claimants, and it seems clear that the action of the Industrial Commission is without warrant in law, and should be reversed. Liberal as are the provisions of the Workmen's Compensation Law, they do not, in my judgment, warrant the paying of this claim, which bears upon its face so much evidence of bad faith, and which is not supported by any evidence of probative force. The mere fact that the alleged employer, making a report on the very day of the accident, under a threatened penalty for a neglect to do so, admitted that he was the employer of the deceased, did not estop him from telling the truth afterward, any more than the claim of Mary Claremont to be the widow of

deceased with five children nearly as old as the alleged father, estopped her from setting up her true relation; and I am persuaded that Joseph Claremont, Jr., was not an employee of Ovid De Coss within the contemplation of the Workmen's Compensation Law; he was clearly engaged in a partnership undertaking as independent contractors under the original contract between De Coss and the Carthage Tissue Paper Company, and was employed as a contractor, not as a laborer. I think there was no evidence before the Industrial Commission to sustain this award, and it should be reversed.